Williams, Judge,
delivered the opinion of the court:
The plaintiff, widow of Dr. John F. W. Meagher who died on August 25, 1931, as a result of injuries received at «Camp Tobyhanna, Pennsylvania, on August 23,1931, brings *456 this suit under the authority of the following special act, of Congress, approved June 14, 1935 (49 Stat. 2077) :
Be it enacted by the Senate and House of Representatives of the United States of America in Congress, assembled, That jurisdiction, is hereby conferred upon, the United States Court of Claims to hear, determine,, and render judgment upon the claim of Winifred Mea-gher for damages on account of the death of her husband, Doctor John F. W. Meagher, caused by and as a. result of injuries sustained while a visitor at the military camp at Tobyhanna, Pennsylvania, on August 23,, 1931: Provided, That such notice of the suit shall be-given to the Attorney General of the United States as. may be provided by order of the said court: Provided further, That said suit shall be brought and commenced, within six months of the date of the passage of this-Act.
Camp Tobyhanna, on August 23, 1931, was a military-reservation owned by the United States. It was maintained by the defendant as a military training ground and camp site, and was under the jurisdiction of the Commanding General of the Third Corps Area, whose office was in’ Baltimore, Maryland. It was designated by the War Department as a federal reservation for the use of the States-for National Guard training. Pursuant to proper military orders the camp during the months of July and August-1931 was used for the training of National Guard troops, of the States of Virginia, Connecticut, Rhode Island, Maryland, and Pennsylvania, designated units of such troops occupying the camp for training purposes for a period of two. weeks each. On August 23, 1931, the camp was occupied and being used for training purposes by the 107th Regiment. Field Artillery, Pennsylvania National Guard, who had been there since August 15, 1931.
Part of the equipment maintained by the defendant at the camp were enclosures known as corrals in which were-kept horses used in connection with the training of artillery and other forces of the national defense of the United States. At the entrance of the corral particularly involved in this-suit, the defendant in 1926 or 1927 had erected and was. maintaining a pair of concrete posts, each .two feet square,, six feet in height above the ground and imbedded two and *457 one-half feet in the ground, which posts, together with certain wooden bars from one post to the other, formed a gateway to the corral. One of these posts was broken off even, with the ground and knocked over sometime during July-1931. There is no evidence as to how the post was broken.. Members of the National Guard then in camp set the post up.. This post fell over, or was knocked down, several times, between the time it was first broken and August 23, 1931., The record does not disclose who set it up on these occasions.
During the encampment of National Guard troops every Sunday was designated as “visitors’ day,” on which day the-public was invited to visit the camp. Drills, ball games, and. band concerts were provided for the entertainment of visitors on these days. On Sunday, August 23, 1931, Dr. Mea-gher, in company with his wife, daughter, son, and some-friends of his children, visited the camp. Dr. Meagher,, with his family and guests, parked his car in an open space-about 50 feet from the corral in question. About four-o’clock in the afternoon they approached the corral and. stood along the fence line near the concrete post on the-left side of the gateway. There was nothing to indicate-in any way that there was anything the matter with either of the concrete posts. While standing there observing the-horses and the soldiers the broken concrete post, without warning of any kind, suddenly fell over on Dr. Meagher,, pinning him to the ground and inflicting injuries from, which he died two days later, August 25, 1931. He was. rightfully on the premises of the camp as a visiting guest,, and the injuries received by him were not in any way the-, result of any negligence on his part.
Plaintiff in the petition alleges that the death of Dr. John. F. W. Meagher was due to and caused by the negligence-of the defendant, its officers and employees, in that the defendant, its officers, and employees knew, or in the exercise of due and reasonable care should have known, of the unsafe, defective, and dangerous condition of the concrete pillar and. took no steps to remedy the same, or to give warning to the public or to the said John F. W. Meagher of the unsafe- and dangerous condition of the pillar, which it was in duty-bound to do.
*458 It is conceded that Camp Tobyhanna and all structures therein, including the broken concrete pillar which fell on .Dr. Meagher, were owned by the defendant at the time of 'his injury. The defendant was therefore under the usual duty which the law imposes on the owner of real estate to exercise due care that structures be kept free from concealed defects dangerous to persons rightfully on the premises, or to give warning thereof. Dr. Meagher was ■rightfully on the premises as a visitor, at the invitation of the defendant,[1] at the time he sustained the injury resulting in his death. The defective condition of the post which caused the injury was a hidden defect, which one standing near the post at the time of the accident and observing it ■could not detect. Dr. Meagher himself was in the exercise of due care and although he stood near the post, did not touch it. Obviously his death was the direct result of the negligence of the one whose duty it was to exercise ordinary •care and diligence to render the premises reasonably safe for his visit. Cooley’s Law of Torts, Students’ Edition T907, Section 859; Barrett v. Lake Ontario Beach Improvement Co., 174 N. Y. 310.
The defendant concedes that the death of Dr. Meagher •resulted from negligence but contends that the negligence 'is directly chargeable to the National Guard. In the brief :it is stated:
All the negligence in this case is directly chargeable to the National Guard. Moreover, the negligence of the National Guard must be admitted. The defendant turned over to them premises absolutely free from a dangerous condition of any kind. Most likely some members of the National Guard broke the post, and certainly some of their members put in motion that chain of events which ultimately caused Doctor Meagher’s death. From a point on the ground where it could do no harm and where the defendant could have seen it and taken proper means to remedy the situation, members of the National Guard picked it up and *459 re-set it so that it looked as if nothing had ever happened to it. They continued to maintain it in that extremely dangerous condition so that to all appearances it looked as strong and substantial as it did when the defendant erected it. On these facts the plaintiff can only succeed if .the negligence of the National Guard can be attributed to the Federal Government.
The contention of the defendant can be sustained only if it be held that the occupation of the camp by a succession of National Guard units, from July 1, 1931, down to the date of the accident, was exclusive and relieved the defendant of its normal obligations as owner of the premises. We do not think that this was the case. The defendant’s duty in respect to the maintenance and repair of structures on the premises was not changed by reason of the occupancy of the camp by the National Guard units for training purposes. Section 9 of the National Defense Act provides in part that—
The Quartermaster General, under the authority of the Secretary of War, shall be charged * * * with the direction of all work pertaining to the construction, maintenance, and repair of buildings, structures, and utilities other than fortifications connected with the Army;
The duty imposed on the defendant by this statute was a continuing one without reference to whether military reservations were occupied by National Guard units or other troops. Pursuant to this obligation a Colonel of the Quartermaster Corps was stationed by the defendant at Baltimore, Maryland. He was a staff officer under the Third Corps Area Commander and his duties included all quartermaster activities in the Corps Area. Under this office and subject to his orders, the defendant kept at Camp Tobyhanna the year-round a resident civilian caretaker whose duties it was at all times to report to the Corps Area quartermaster defective conditions of structures on the premises. Colonel Baskette of the Quartermaster Corps, to whom this civilian caretaker was required to report, testified as to his duties as follows:
Q. 35. Did Bender as caretaker make any reports to you?
A. Frequently.
*460 Q. 36. Oral or in. writing ?
A. Both.
Q. 37. During the period of the National Guard encampments or not?
A. Both.
Q. 38. Both while the National Guard troops were there and while they were not there?
A. Yes.
XQ. 121. Would the matter of seeing a pillar down have been one where he [Bender] would have had authority to go ahead and set it up ?
A. If he had seen it down, he would have taken care of it; yes, sir.
X Q. 122. Was there anybody else there whose duty it was to look after matters like that besides Sgt. Bender ?
A. No, sir.
It is clear from this testimony which stands uncontra-dicted in the record that the defendant did not relinquish its obligation as owner of the premises, to keep the structures thereon in repair, and in a reasonably safe condition, free from hidden dangers to persons rightfully on the premises. Its own quartermaster organization remained in charge of repairs throughout the coming and going of the various National Guard units. Horses and other federal property remained at the camp, much of which was used by the National Guard throughout the entire period of their training. These facts disclose a measure of control over the premises retained by the defendant utterly inconsistent with exclusive National Guard possession.
The record does not disclose the manner in which the defective concrete post in question was broken, or by whom it was broken. However, more than three weeks elapsed between the time it fell and the date of the fatal accident resulting in the death of Dr. Meagher. During that time the post fell over several times and was set up by National Guard troops or others unknown. The defendant’s caretaker was present and on duty at the camp throughout this entire time. The defective and dangerous condition of the post must have been known to many people about the camp. It is a most surprising and incredible thing that the caretaker did not learn about it. Apparently, however, he did not, as he made no report concerning it to the defend *461 ant, and made no effort to remedy the defect or to warn the public of the dangerous condition of the post. The conclusion is inevitable that the caretaker was guilty of negligence in the performance of his duty. By the exercise of reasonable and ordinary diligence he undoubtedly would have known the dangerous condition of the post and reported the same to his superior so that steps could have been taken to forestall the frightful accident that resulted in the death of Dr. Meagher. His negligence was the negligence of the defendant, whose agent he was. If the services of a single caretaker were insufficient to make sure of adequate supervision of the premises, it was the duty of the defendant to provide more men for that purpose.
We have found as a fact (Finding 11) that Dr. Meagher’s death was the direct result of the negligence of the defendant, and that plaintiff by reason of his death was damaged in the amount of $25,000.00 (Finding 16). Plaintiff is therefore entitled to recover the sum of $25,000.00 and judgment in that amount is hereby awarded.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.

 Training Memorandum No. 1, entitled “Instructions for the Conduct of Summer Training Camps in the Third Corps Area,” issued by the Commander of the Third Corps Area in 1930 and continued in force for 1931, contained the statement: “A cordial welcome will be extended to all visitors ;.at summer training camps. Ceremonies as a courtesy to visitors will be held at such times as not to interfere with schedules of instructions.”